UNITED STATES of America, Plaintiff–Appellee,

v.

Quincy J. CONWAY, Defendant–Appellant.

No. 94–3406.

United States Court of Appeals, Tenth Circuit.

Dec. 22, 1995.

Steven K. Gradert, Assistant Federal Public Defender for the District of Kansas (David J. Phillips, Federal Public Defender, with him on the brief), Wichita, Kansas, for the Appellant.

Lanny D. Welch, Assistant United States Attorney for the District of Kansas (Randall K. Rathbun, United States Attorney, with him on the brief), Wichita, Kansas, for the Appellee.

Before TACHA, LOGAN, and BALDOCK, Circuit Judges.

TACHA, Circuit Judge.

On June 23, 1994, a jury convicted Quincy Conway of two counts of knowing and intentional possession of controlled substances, crack cocaine in one count and powder cocaine in the other, in violation of 21 U.S.C. § 844 and 18 U.S.C. § 2. Conway now appeals, claiming (1) that the district court erred when it held that he lacked standing to object on Fourth Amendment grounds to the search of a motel room; (2) that the court's jury instruction defining "reasonable doubt" denied the defendant's Fifth Amendment right to due process and Sixth Amendment right to a trial by jury; (3) that the court erred when it admitted into evidence three prior drug-related arrests of the defendant; and (4) that the court erred when it denied the defendant's motions for judgment of acquittal due to insufficient evidence supporting the jury's verdict.

We exercise jurisdiction pursuant to 28 U.S.C. § 1291. Our disposition of this case turns primarily on the legitimacy of the motel room search, specifically whether the defendant possessed a subjective expectation of privacy that society is prepared to recognize as reasonable. We conclude that he did not present sufficient evidence to establish such an expectation. Conway's remaining challenges are without merit. Accordingly, we affirm.

## I. Background

In the early morning hours of November 17, 1993, officers of the Wichita Police Department received word from an informant that two males and one female were in room number 33 of the Courtesy Motel on South Broadway in Wichita, Kansas, and were possibly engaged in narcotics trafficking. The informant further indicated that one of the males was named "Hondu." At approximately 1:00, the officers knocked on the door of room 33 for several minutes until Conway, completely undressed, opened the door partially. The officers asked him if the motel room was his. Conway stated that the room belonged to someone named "Randy" and that he was merely borrowing the room to engage in sexual relations with a female friend. The officers requested permission to search the room for Hondu. Conway agreed to allow the officers into the room on the condition that they would leave immediately after determining that Hondu was not present. However, the defendant indicated that he wished to dress first and began to shut the door. One officer then planted his foot between the door and the doorjamb to prevent the door from closing. At that point, Conway made a gesture indicating acquiescence and allowed the officers into the room.

After searching the room for Hondu and finding no one other than the defendant's female companion, an officer noticed a razor blade on the dresser. There appeared to be cocaine residue on the blade. An on-site test confirmed that the substance was indeed cocaine. The officers then found four plastic bags of crack and powder cocaine under a T-shirt. The T-shirt was located next to a pager and the room key on the dresser. When asked, Conway acknowledged that the pager belonged to him.

Conway was taken into custody, at which point he denied ownership of the T-shirt and the cocaine. He also offered to assist the officers in arresting and prosecuting others who were "larger than him" in the cocaine trade. Although Conway was unable to state the last name of the registered occupant of the motel room, motel records indicated that the room had been registered to a Randy Rone. Conway had been in the room for, at

most, fifteen minutes before the officers arrived. He subsequently admitted knowing of the motel's policy forbidding persons other than registered guests from using the motel rooms.

## II. The Defendant's Lack of Standing To Challenge the Search

 Whether a defendant has standing to challenge a search under the Fourth Amendment is a question of law that is subject to de novo review. *U.S. v. Rubio-Rivera,* 917 F.2d 1271, 1274–75 (10th Cir.1990). "A defendant may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated." *Id* at 1274. Standing to lodge such a challenge depends upon two factors: (1) whether one demonstrated by his conduct a subjective expectation of privacy, and (2) whether society is prepared to recognize that expectation as reasonable. *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *United States v. Soto,* 988 F.2d 1548, 1552 (10th Cir.1993).

 Before applying these requirements to the present case, we note the evidentiary burdens borne by a defendant seeking to suppress evidence on Fourth Amendment grounds. As this court iterated in *United States v. Carr,* 939 F.2d 1442, 1444 (10th Cir.1991), if a party moves to suppress evidence obtained as a result of an allegedly unconstitutional search, he has the duty to demonstrate a subjective expectation of privacy that society is prepared to recognize as reasonable. *See also United States v. Deninno,* 29 F.3d 572, 576 (10th Cir.1994). This precept stems from the general rule that "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas v. Illinois,* 439 U.S. 128, 131 n. 1, 99 S.Ct. 421, 424 n. 1, 58 L.Ed.2d 387 (1978).

 We now turn to the question of whether Conway met the two requirements for establishing standing to challenge the search. As to the first half of the standing inquiry, Conway's personal, subjective expectation of privacy was unclear. Although the task in which he was engaged is one in which participants usually seek privacy, the activity is not, in itself, dispositive of the subjective expectation question. Conway testified at the suppression hearing that he was aware of the motel's policy barring persons other than registered occupants from using the motel rooms. Given this admission and the motel's practice of requesting police to remove unregistered occupants from the rooms, it is questionable whether Conway actually expected to be allowed to remain in the room once discovered.

 Regardless of Conway's subjective expectations, he plainly fails the second half of the standing test; that is, he did not assert an expectation of privacy that society is prepared to recognize as reasonable. Clearly, a guest may possess an expectation of privacy in the premises of his host; and that expectation may meet the standard of societal reasonableness. *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). The pivotal question in this case is whether Conway presented sufficient evidence to show that he was an invited guest of the registered occupant of the motel room. In *Carr,* we held that where an occupant of a motel room registered to another person presented no evidence that he was in lawful possession of the room or that he was the invited guest of the person to whom the room was registered, he failed to establish a reasonable expectation of privacy in the room. 939 F.2d at 1446. Likewise, in this case the evidence failed to establish Conway's guest status and expectation of privacy in the motel room.

 Mere physical possession or control of property is not sufficient to establish standing to object to a search of that property. *United States v. Arango,* 912 F.2d 441, 444–446 (10th Cir.1990). Although a defendant need not come forward with documentation establishing legal possession of the area searched, *id.* at 445, he must at least demonstrate, in the case of a motel room, that he was the invited guest of the renter of the premises. Conway presented no testimony from the registered occupant confirming his asserted status as the registered occupant's

guest. His possession of the motel room key and knowledge of the registered occupant's first name only is insufficient to establish his status as a guest. We find that Conway was without standing to challenge the constitutionality of the search because he failed to demonstrate an actual expectation of privacy and because he failed to demonstrate that he was an invited guest of the registered occupant.

### III. The Reasonable Doubt Instruction

The sufficiency of a district court's jury instructions involves questions of law subject to de novo review. *United States v. Barrera–Gonzales*, 952 F.2d 1269, 1271 (10th Cir.1992). Conway claims that the court's instruction defining "reasonable doubt" understated the degree of certainty that a jury must reach in order to find a defendant guilty and subtly shifted the burden of proof to the defense. The challenged instruction stated:

> Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt, and find him not guilty.

A trial judge retains extensive discretion in tailoring jury instructions, provided that they correctly state the law and fairly and adequately cover the issues presented. *United States v. Merchant*, 992 F.2d 1091, 1096 (10th Cir.1993); *United States v. Bryant*, 892 F.2d 1466, 1468 (10th Cir.1989), *cert. denied*, 496 U.S. 939, 110 S.Ct. 3220, 110 L.Ed.2d 667 (1990). The Supreme Court recognized the breadth of judicial discretion regarding the definition of reasonable doubt in *Victor v. Nebraska:*

> The beyond a reasonable doubt standard is a requirement of due process, but the Constitution neither prohibits trial courts from

defining reasonable doubt nor requires them to do so as a matter of course. Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proven beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, "taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury."

—— U.S. ——, ——, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994) (quoting *Holland v. United States*, 348 U.S. 121, 140, 75 S.Ct. 127, 137–38, 99 L.Ed. 150 (1954)) (bracketed alterations in original) (other citations omitted). Thus, trial courts retain considerable latitude in instructing juries on reasonable doubt.

The instruction challenged in the present case can hardly be described as unusual or untried. It was copied virtually verbatim from the pattern instructions of the Federal Judicial Center. Federal Judicial Center, Pattern Criminal Jury Instructions 17–18 (1987) (instruction 21). Moreover, Justice Ginsburg specifically cited this instruction with approval as a "clear, straightforward, and accurate" explication of reasonable doubt. *Victor,* —— U.S. at ——, 114 S.Ct. at 1253 (Ginsburg, J., concurring). We agree that the "firmly convinced" language, juxtaposed with the insistence that a jury must acquit in the presence of "a real possibility" that the defendant is not guilty, is a correct and comprehensible statement of the reasonable doubt standard. Also, we reject the defendant's contention that the phrase "real possibility," as opposed to "possibility," impermissibly shifts the burden of proof. *Barrera–Gonzales,* 952 F.2d at 1273.

### IV. The Admissibility of the Prior Drug-related Arrests

Conway claims that the district court erred by admitting evidence of his three prior drug-related arrests. He contends that the court's decision was improper under Rule 404(b) of the Federal Rules of Evidence because the arrests constituted inadmissible character evidence used to demonstrate action in conformity therewith. We review this decision for abuse of discretion.

*United States v. Patterson,* 20 F.3d 809, 812 (10th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 128, 130 L.Ed.2d 72 (1994). Applying the four-part inquiry enumerated by the Supreme Court in *Huddleston v. United States,* we must assess whether (1) the evidence of similar acts was offered for a proper purpose under Rule 404(b), (2) the evidence was relevant under Rule 402, (3) the probative value of the evidence was not substantially outweighed by any unfairly prejudicial impact under Rule 403, and (4) the district court, upon request, properly instructed the jury to consider the evidence only for the purpose for which it was admitted. 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988); *accord United States v. Johnson,* 42 F.3d 1312, 1315 (10th Cir.1994).

> Federal Rule of Evidence 404(b) provides: Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

The government introduced evidence of three prior arrests of Conway, all of which involved the sale of crack cocaine from motel rooms on South Broadway in Wichita, Kansas—the same street on which the Courtesy Motel is located. The government contends that the evidence was properly admitted for the purposes of showing knowledge, absence of mistake or accident, intent, and common plan. In *United States v. Record,* we held that evidence of prior acts involving the importation of marijuana was properly admitted under Rule 404(b) to support convictions for conspiring to import, and conspiring to possess with intent to distribute, cocaine and marijuana. 873 F.2d 1363, 1372–76 (10th Cir.1989). The evidence under scrutiny here is similarly admissible under Rule 404(b). Conway's prior arrests were properly regarded as admissible to demonstrate a common plan to possess and distribute cocaine from motels in the South Broadway area, as well as to demonstrate knowledge, intent, and absence of mistake or accident.

We find that the evidence of prior arrests also meets the second requirement of the *Huddleston* inquiry, namely that it was relevant under Rule 402. "The Tenth Circuit has long recognized the relevance of previous wrongs and crimes in the context of narcotics violations." *United States v. Brown,* 770 F.2d 912, 914 (10th Cir.1985), *rev'd on other grounds,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). This is particularly true when the uncharged misconduct is close in time and similar in method to the charged crime. *Record,* 873 F.2d at 1375 (citing *United States v. Bridwell,* 583 F.2d 1135, 1140 (10th Cir.1978)).

As for the third requirement of the *Huddleston* inquiry, the probative value of the evidence was not outweighed by its potential for unfair prejudice under Rule 403. Given the similarity of the circumstances between Conway's prior drug-related arrests and the incident for which he was convicted, the probative value of the evidence was very high for the purposes of showing a common plan, knowledge, intent, and the absence of mistake or accident. Accordingly, any potentially prejudicial impact had to be extremely heavy, in order for the district court to have deemed the evidence inadmissible under Rule 403. In *United States v. Easter,* 981 F.2d 1549 (10th Cir.1992), for example, we held that the probativeness of evidence of prior involvement in narcotics trafficking was not substantially outweighed by the risk of unfair prejudice to a defendant charged with possession of cocaine base with intent to distribute. The same is true in the present case. Moreover, we are required to give "substantial deference ... to a trial court's Rule 403 ruling." *Id.* at 1554. In this instance, defense counsel objected generally to the admission of the evidence; and the district court considered the matter, determining that the evidence was admissible. We will not disturb that ruling on Rule 403 grounds unless it is clear that the district court miscalculated the probative value or the prejudicial effect of the evidence. Here, we cannot say that the district court erred.

The district court satisfied the fourth and final requirement of *Huddleston* when it gave limiting instructions. The court did so both at the time that the evidence was admitted and at the close of the case as part of the jury instructions. In its final instructions to the jury the court stated:

[Y]ou are reminded that your verdict in this case must respond only to the specific charges set forth in the indictment, and that a person may not be convicted of one offense by evidence tending to show that he may have committed or participated in the commission of other offenses. Such evidence as may have tended to show the commission of other similar offenses was admitted only for the limited purpose of proving knowledge, absence of mistake or accident, intent and common plan by the defendant to commit the specific offense or offenses charged in the indictment.

This instruction sufficed to explain to the jury the limited purposes for introduction of the evidence of the defendant's prior arrests. The instruction also served to mitigate any prejudicial impact by cautioning the jury not to infer guilt in the charged crime from evidence of prior similar acts. We hold that the district court acted within its discretion in admitting evidence of Conway's prior drug-related arrests.

### V. The Sufficiency of the Evidence to Support the Jury's Verdict

■ Defendant Conway contends that the government failed to present sufficient evidence to prove him guilty beyond a reasonable doubt. He argues that the district court therefore erred when it denied his motions for acquittal due to insufficient evidence. In particular, Conway asserts that the presence of a second person in the motel room, as well as the fact that two other individuals had either been present or had access to the room prior to the police's arrival, raises reasonable doubt as to his ownership of the cocaine.

■ We review questions of the sufficiency of the evidence in the light most favorable to the government in order to ascertain "whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt." *United States v. Powell*, 982 F.2d 1422, 1430 (10th Cir.1992). Where possession of narcotics is concerned, the government may prove either actual or constructive possession. "Generally, a person has constructive possession of narcotics if he knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics are found." *United States v. Hager*, 969 F.2d 883, 888 (10th Cir.1992). If there is a sufficient nexus between the defendant and the narcotics, circumstantial evidence alone can establish constructive possession. *Id.* In this case, numerous factors combined to support a finding of constructive possession, including: Conway's presence in the room and apparent control over the items in it, the proximity of the cocaine to Conway's acknowledged possessions, the fact that police were originally informed that two persons in addition to Hondu were engaged in narcotics trafficking in room 33, Conway's offer to help the police arrest larger players in the cocaine trade, and Conway's prior arrests involving cocaine trafficking from motel rooms on South Broadway. A rational trier of fact could have concluded from the circumstantial evidence presented at trial that defendant Conway was guilty of possession of the cocaine.

We AFFIRM.