**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 31 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GILBERTO SALCIDO-LUZANIA,

Defendant-Appellant.

No. 97-2399
(D.C. No. 97-CR-128-JC)
(New Mexico)

**ORDER AND JUDGMENT**[*]

Before **PORFILIO, HOLLOWAY,** and **ANDERSON,** Circuit Judges.

Defendant-Appellant Gilberto Salcido-Luzania (Salcido) was convicted by a jury of

conspiracy to possess with intent to distribute more than 100 kilograms of marijuana, in

violation of 21 U.S.C. § 846, and possession with intent to distribute more than 100

kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). The district

court sentenced Salcido to two concurrent terms of 121 months' imprisonment, inter alia.

Judgment was entered on December 7, 1997. Salcido timely appealed the judgment and

---

[*]This order and judgment is not binding precedent, except under the doctrines of law
of the case, res judicata, and collateral estoppel. This court generally disfavors the citation
of orders and judgments; nevertheless, an order and judgment may be cited under the terms
and conditions of 10th Cir. R. 36.3.

convictions. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

**I**

On January 26, 1997, United States Border Patrol agents learned of a possible intrusion 30 miles west of Columbus, New Mexico, on the border with Mexico. II App. at 27. The agents went to the area of the possible intrusion and intercepted a white four-wheel drive Chevrolet pickup truck with a camper shell that was attempting to access Interstate 10 through a hole in the fence. Id. at 30, 126. Three persons who were in the truck ran away from the vehicle. The first individual stopped, Sam Hernandez, was immediately apprehended. II App. at 30-31. The agents caught two others, Martin Ramirez and Ruben Gutierrez, several miles from the stop, using a Forward Looking Infrared Device (FLIR). II App. at 45-47. The fourth individual, Andres Porras, escaped that night but later turned himself in to the authorities. Salcido was not present. The truck contained over 1,200 pounds of marijuana. III App. at 275-76. With Hernandez, Ramirez and Gutierrez, and in the area around the truck, there were radio scanners, a radio, big thick gloves, wire cutters, a flashlight with a red lens, night vision goggles, binoculars and clothing. II App. at 31, 48, 62-63, 126 and 135.

Ramirez, Gutierrez, Hernandez and Porras all agreed to plea agreements whereby they would testify against Salcido. Aplt. Brief Addendum "A" - "D" (Ramirez, Gutierrez, Hernandez and Porras plea agreements). Ramirez testified that he originally met Salcido in 1992 in Deming, New Mexico. Ramirez knew Salcido by his nickname, "El Cuervo" or the

2

Crow. After serving a 51-month sentence for a federal marijuana conviction, Ramirez returned to Deming and again met Salcido. In December 1996, Ramirez and Salcido discussed the possibility of transporting marijuana. II App. at 108, 110. Ramirez agreed to transport marijuana for Salcido. II App. at 113-14. Salcido provided the transport and the drugs and Ramirez, along with Hernandez and Gutierrez, would pick up the transport vehicle, a Chevrolet pickup with a camper shell, from Salcido in an area 30 miles west of Deming and 30 miles south of Interstate 10. II App. at 114-16. Ramirez, Gutierrez, Hernandez and Salcido each had hand-held Maxon radios and kept in radio contact the night of the December transport. Salcido paid $20,000 to the entire transport team. II App. at 117-21.

Ramirez further testified that Salcido requested him to transport the instant load in January 1997. Ramirez agreed to transport the marijuana on January 26, 1997, the same day as the Super Bowl. II App. at 122. At approximately 11:00 a.m. on January 26, Ramirez went to Salcido's home to pick up two Motorola radios which the defendant provided to be used that night. II App. at 125, 127. The transport proceeded nearly identically to the December 1996 load except that Porras joined the transport team. II App. at 121-25. The transport went according to plan until United States Border Patrol agents spotted them. Ramirez testified that after he was arrested he told Customs Service Agent J. R. Long about Salcido's participation in the drug transportation scheme. Ramirez stated he implicated Salcido without the benefit of counsel or a plea agreement. II App. at 128-29.

At trial, Ramirez was asked whether the person he knew as the Crow was seated in

the courtroom. Ramirez identified defendant at counsel's table as the Crow. II App. at 137-38.

Gutierrez, pursuant to his plea agreement, also testified against Salcido. Gutierrez was introduced to Salcido by Ramirez in December 1996. II App. at 191. Salcido asked Gutierrez to smuggle marijuana for Salcido. II App. at 192-95. Salcido offered to pay him, Ramirez and Hernandez $100 a kilogram for marijuana transported. II App. at 195. Gutierrez testified about the details of the December shipment similarly to the testimony of Ramirez. II App. at 196-204. Gutierrez then testified about the January 1997 shipment, stating that the procedure for the shipment was the same as the December 1996 shipment except that the team would start in the afternoon instead of the evening. When they got to the border they were at the same spot where they had been in December. II App. at 206, 209. Gutierrez stated that during the transaction he and Ramirez contacted Salcido via the radios Salcido had given to the team. II App. at 209. In his testimony Gutierrez identified Salcido and described his clothing - stripped shirt, white shirt, and green pants. Id. at 214.

Hernandez also testified against Salcido. He stated that he was asked by Gutierrez to participate in the marijuana transportations in December 1996 and January 1997. II App. at 170-71. Hernandez did not recall any references to Salcido or to a man named the Crow. II App. at 172-73. His testimony primarily consisted of an admission that he was to act as a lookout for the drug transports. II App. at 172.

Porras testified against Salcido but, like Hernandez, stated he did not know Salcido

4

personally. II App. at 177. Porras testified that he agreed to help transport the marijuana in December 1996 but did not do so because he was working in Albuquerque. II App. at 178. However, Porras did participate in the January load by taking Ramirez, Gutierrez and Hernandez to a drop-off point and then waited for the three individuals to appear with the truck carrying the marijuana. II App. at 181-82. Porras further testified that Ramirez and Gutierrez made references to someone called the Crow who was also involved, but Porras did not know anything else about him. II App. at 180-81.

Salcido offered an alibi defense. I App. (Doc. 110)(Defendant's Written Notice of Alibi). He presented three witnesses, his brother Feliciano Salcido, Francisco Duran and Israel Saenz-Garcia, who each testified that on January 26, 1997, Salcido was at La Cueva, a drinking establishment, from approximately 11:00 a.m. until after 10:00 p.m. III App. at 327, 329 (Feliciano Salcido); 355-56 (Francisco Duran); 370-373 (Saenz). However, each alibi witness conceded they did not keep tabs on everyone at La Cueva the entire day. III App. at 336-37 (Feliciano Salcido); 356 (Duran); 378, 380-81 (Saenz). Duran and Saenz said defendant Salcido left to go buy meat around 12:00 or 1:00 and Duran was not watching him all day. Id. at 356.

A fourth alibi witness, Socorro Tarango, was called by the government during its case in chief. He had known the defendant for ten years and knew defendant's nickname was "Cuervo," which is translated as "Crow." III App. at 251-52. Tarango said Gilberto Salcido was at La Cueva, arriving about 11:00 a.m. or 11:30 a.m., on Super Bowl Sunday. Id. at 254-

5

56. Salcido went to get food about 12:00 to 1:00 p.m. and was gone about one hour. Id. at 257. Tarango recalled the halftime of the game about 5:30 p.m. or 6:00 p.m. At one point Tarango said defendant was at La Cueva until halftime and Tarango did not know where defendant went then. Id. at 262. Later Tarango testified defendant was at La Cueva during the Super Bowl. Id. at 268. However, Tarango later said he was not absolutely certain that defendant was there from half-time on. Id. at 269.

At the beginning of the trial, defense counsel Acosta asked that the witnesses be sequestered (See Fed. R. Evid. 615). The trial judge allowed witnesses to be in court through opening statement but then required their sequestration. II App. at 8. The judge admonished Luna County Sheriff Investigator Gary Leyba, after he testified, to not speak with others who might yet be witnesses concerning his or their testimony. II App. at 105-06. The night before Tarango, Duran and Saenz were to testify for the defense, Leyba and Customs Service Agent J. R. Long appeared at Tarango's, Duran's and Saenz's respective homes to "interview" them. III App. at 264; 305-06; 373-82. Saenz testified that the agents told him they had spoken to other witnesses, whose story did not match Saenz's. III App. at 374. They further told Saenz he had time to withdraw his story because the government could "still file charges of something" against Saenz. III App. at 375. Salcido's counsel did not object to the testimony of the witnesses contacted and did not request an evidentiary hearing on an alleged violation of the court's sequestration order.

6

## II

Salcido asserts five claims of error. First, he says the testimony of Ramirez and Gutierrez was given pursuant to a plea agreement promising leniency and that this exchange of leniency for testimony violates 18 U.S.C. § 201(c)(2). Second, the district court erred in denying his motion for acquittal because the government's evidence admitted at trial was insufficient to support the convictions of Salcido. Third, the alleged violation of Rule 615 prejudiced Salcido so that a new trial is required. Fourth, the district court abused its discretion in admitting evidence of prior uncharged conduct in violation of Rule 404(b) of the Federal Rules of Evidence. Fifth, the prosecution engaged in misconduct by commenting on Salcido's failure to call an additional alibi witness. We address each claim of error in turn.

## A

Salcido's first claim of error concerns 18 U.S.C. § 201(c)(2). This statute provides in part:

> Whoever . . . directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court . . . authorized by the laws of the United States to hear evidence and take testimony . . . shall be fined under this title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c)(2). It is undisputed that Ramirez, Gutierrez, Hernandez and Porras agreed to testify against Salcido in exchange for leniency, pursuant to plea agreements.

7

Without citing the case in his brief, Salcido in essence asks us to apply the holding in United States v. Singleton, 144 F.3d 1343 (10th Cir. 1998), in which a panel of our circuit held that testimony of a co-defendant, given in exchange for a promise of leniency by the government, violates the plain language of 18 U.S.C. § 201(c)(2) and should have been suppressed and that failure to do so was not harmless error. This court en banc vacated the panel decision, Singleton, 144 F.3d at 1361, and on January 8, 1999, rejected the principal ruling of the panel decision, holding instead that 18 U.S.C. § 201(c)(2) "does not apply to the United States or an Assistant United States Attorney functioning within the official scope of the office." United States v. Singleton, 165 F.3d 1297, 1298 (10th Cir. 1999)(en banc). Our en banc decision expressly rejects Salcido's argument. [1] We, of course, must follow our court's authoritative recent en banc ruling which is dispositive on this issue.

**B**

Next, Salcido asserts that the district court erred in denying his motion for acquittal because the government did not present sufficient evidence to support his convictions. At

---

[1]The government notes in its brief, Brief of Appellee at 8-9, that the Singleton panel held that, along with violating 18 U.S.C. § 201(c)(2), a government prosecutor who promises leniency to a co-defendant in exchange for testimony violates Rule 3.4(b) of the Kansas Rules of Professional Conduct. Singleton, 144 F.3d at 1358-59. United States Attorneys are required by law to be licensed to practice in a state and comply with that state's rules of professional conduct. See 28 U.S.C. § 530B(a).

The order granting en banc rehearing of Singleton withdrew the panel decision in full and the parties did not raise the Kansas rule for consideration by the en banc court. Moreover, in the instant appeal Salcido does not premise his claim of error on the New Mexico rule of professional conduct that parallels Kansas Rule 3.4(b). For these reasons we do not discuss the New Mexico rule.

the close of the government's case-in-chief, Salcido orally and by written motion moved the court for a judgment of acquittal, which the district court denied. III App. at 312, 316-17. Salcido failed to renew his motion for judgment of acquittal at the close of all of the evidence.

As a general rule, the failure to renew a motion for judgment of acquittal waives a sufficiency claim on appeal. See United States v. Guerrero, 517 F.2d 528, 530 (10th Cir. 1975). However, we have recognized that we may review sua sponte the sufficiency of the evidence "as plain error-under circumstances strongly implying a fundamental defect or error of sufficient magnitude to undermine our confidence that justice was served." United States v. Santistevan, 39 F.3d 250, 256 (10th Cir. 1994).

Here, the government does not press a waiver argument on appeal but instead directly rebuts Salcido's sufficiency claim. Therefore, we review Salcido's sufficiency claim but review for plain error.[2]

To sustain a conviction for conspiracy under 21 U.S.C. § 846, the government must prove beyond a reasonable doubt that "the defendant knew at least the essential objectives of the conspiracy and knowingly and voluntarily became a part of it." United States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994). The "agreement constituting a conspiracy

---

[2]The normal review standard for a sufficiency claim is *de novo* and we "ask only whether, taking evidence – both direct and circumstantial, together with the reasonable inferences drawn therefrom – in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir.), cert. denied, 117 S. Ct. (1996).

may be inferred from the acts of the parties and other circumstantial evidence indicating concert of action for the accomplishment of a common purpose." Id.

A conviction pursuant to 21 U.S.C. § 841(a)(1) is warranted if the government proves beyond a reasonable doubt that a defendant: (1) knowingly possessed, (2) a controlled substance, (3) and intended to distribute it. See United States v. Johnson, 57 F.3d 968, 971 (10th Cir. 1995). Constructive possession is sufficient to support a conviction, see United States v. Jones, 49 F.3d 628, 632 (10th Cir. 1995), which may be found "if a person knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics are found." Id. (quoting United States v. Coslet, 987 F.2d 1493, 1495 (10th Cir. 1993)).

We are not persuaded the district court committed error in denying Salcido's motion for judgment of acquittal. The government offered the testimony of several witnesses from which the jury could infer that Salcido organized, facilitated and paid for, or intended to pay for, the shipments of marijuana in December 1996 and January 1997, working with others. This testimony establishes the "knowingly possesses" element of 21 U.S.C. § 841(a)(1) and the elements of the conspiracy charge. We note that Salcido attacks the testimony of Ramirez and Gutierrez, who identified him as a participant in the criminal scheme, as lacking credibility. We reject this attack because we "may neither weigh conflicting evidence nor consider credibility of witnesses" in reviewing a sufficiency of the evidence claim. United States v. Bornfield, 145 F.3d 1123, 1132 (10th Cir. 1998).

10

## C

At the beginning of the trial, defense counsel invoked Fed. R. Evid. 615 for sequestration of the witnesses. II R. at 8. Salcido argues that the government violated the judge's directions given under the rule and that the violation caused Salcido prejudice. Because Salcido did not object or request an evidentiary hearing during the trial on this claim of error, we review his claim for plain error. Fed. R. Crim. P. 52(b); see also United States v. Ortega-Chavez, 682 F.2d 1086, 1089-90 (5th Cir. 1982).

Rule 615 provides in pertinent part: "At the request of a party the court shall order witnesses excluded so they cannot hear the testimony of other witnesses[.]" The rule is also construed to prohibit witnesses from discussing their testimony, or what has occurred at trial, with other witnesses who have not yet testified. See United States v. Greschner, 802 F.2d 373, 375-76 (10th Cir. 1986). Here the judge gave instructions applying this interpretation. The rule's purpose is obvious – to prevent the shaping of testimony by hearing what other witnesses say. See Taylor, 388 F.2d 786, 788 (9th Cir. 1967).

We agree with Salcido that the government violated Rule 615. In particular, the district court specifically admonished Investigator Leyba not to speak with other witnesses who may yet testify about his testimony. II App. at 105-06. Yet that night Leyba, a narcotics investigator with the sheriff's office, II R. at 96, along with Agent Long, another witness in the case, visited Tarango, Duran and Saenz, three of Salcido's alibi witnesses. Though the government claims that Agents Leyba and Long merely questioned the alibi witnesses on

11

matters unrelated to the agents' testimony, Saenz testified he was told by the government agents that they had talked with "three or four guys" and that their testimony was not the same as Saenz was giving. III App. at 374, 376. Moreover, Saenz stated the agents said they could charge him if he "didn't tell the truth." Id. at 376. This type of contact is conduct such as Rule 615 is designed to guard against.

However, the burden lies with Salcido to show the government's violation caused him "probable prejudice" for a reversible violation to be established. Burks v. Oklahoma Pub. Co., 81 F.3d 975, 980 (10th Cir.), cert. denied, 117 S. Ct. 302 (1996); United States v. Pritchard, 781 F.2d 179, 183 (10th Cir. 1986). To show probable prejudice, Salcido must show Agents Long's and Leyba's contacts had an apparent effect or influence on the witnesses' testimony. See Greschner, 802 F.2d at 376; see also United States v. Buchanan, 787 F.2d 477, 485 (10th Cir. 1986)(no prejudice was found because the witnesses did not discuss substantive aspects of the case, the discussion did not appear to affect the witnesses' testimony, and defense counsel fully questioned the offending witness on cross-examination). We hold that Salcido has failed to show plain error and prejudice. Despite the fact that Saenz and Duran were improperly contacted, they testified as alibi witnesses for Salcido. Their testimony exculpating Salcido was, however, rejected by the jury.

The improper contact of Tarango presents a significantly more difficult situation. Tarango had been scheduled to testify as an alibi witness for Salcido but, after being contacted by the government, he was called as a government witness. His testimony, which

12

the government prosecutor emphasized in closing argument, III App. at 404,[3] stated that Salcido was not present at La Cueva for about one hour at approximately noon on that Sunday, January 26, 1997. III App. at 257.

Despite our concerns, we cannot conclude that plain error exists. First, a close review of the trial transcript indicates that the alibi witnesses were not able to definitely place Salcido at La Cueva during the relevant time period. Saenz in fact stated that Salcido left La Cueva around one o'clock p.m. for about an hour to buy meat and beer, which is essentially consistent with Tarango's testimony. III App. at 371. Second, Salcido's counsel had the opportunity to attack Tarango's credibility both on cross-examination and in closing argument. III App. at 265; III App at 420. We conclude that Salcido has not met his burden to show "probable prejudice," using a plain error standard of review.[4]

**D**

The fourth claim of error concerns evidence the district court admitted regarding prior uncharged acts of misconduct. We review the admission of the evidence for abuse of discretion. United States v. Johnson, 42 F.3d 1312, 1315 (10th Cir. 1994). Before trial, Salcido moved the court to exclude evidence that in 1992 Ramirez and Gutierrez became

---

[3] "Perhaps the key alibi witness in this case is one we called. A friend, a good friend of the Defendant's, Socorro Tarango at one point testified, 'I didn't see [defendant Salcido] after half time [of the Super Bowl game].'"

[4] While prejudicial error was not found by the trial judge, he could have sanctioned Leyba or others for failure to comply with the court's specific directive. See also United States v. McMahon, 104 F.3d 638 (4th Cir. 1997).

associated with Salcido. The district court did not rule on the evidence's admissibility but took the matter under advisement. Aple. Supp. App. at 9. At trial, the only evidence pertaining to the 1992 meeting was testimony by Ramirez that he met Salcido in 1992 before he left to serve his 51-month prison sentence. We fail to see how the admission of this evidence was an abuse of discretion.

As part of his pretrial motion in limine, Salcido also moved to exclude evidence of the December 1996 load because it allegedly violated Federal Rule of Evidence 404(b). The district court expressly denied Salcido's motion, ruling that the December 1996 load was evidence of Salcido's *modus operandi*, knowledge of the drug distribution scheme, and intent. Aple. Supp. App. at 5, 9. Rule 404(b) prohibits the admission of evidence of prior uncharged misconduct that is offered to show character in conformity therewith. However, evidence of prior uncharged misconduct, or bad character evidence, is admissible if it satisfies the four-prong test of Huddleston v. United States, 485 U.S. 681, 691-92 (1988). Evidence of bad character is admissible if: (1) the evidence is offered for a proper purpose under Rule 404(b); (2) the evidence is relevant; (3) the evidence's prejudicial effect does not substantially outweigh its probative value; and (4) if requested, the district court gave a limiting and curative instruction. Id. at 691-92; Bornfield, 145 F.3d at 1131.

The district court admitted evidence of the December 1996 load to show Salcido's *modus operandi*, knowledge and intent. Admission of the December 1996 load for these purposes was proper under Rule 404(b). See United States v. Conway , 73 F.3d 975, 981

(10th Cir. 1995)(evidence of defendant's three prior crack cocaine arrests was admissible in subsequent narcotics prosecution as probative of common plan, knowledge and intent); United States v. Easter, 981 F.2d 1549, 1554 (10th Cir. 1992)(evidence of prior crack cocaine deals between co-conspirators admissible to show plan, scheme, and knowledge).

The evidence is clearly relevant because it tends to show Salcido organized and executed the January 1997 load using the December 1996 load as a model, using the same location for breaking through the fence at the border. See Fed. R. Evid. 401. The evidence is especially relevant as it occurred merely one month prior to the January 1997 transport. "The Tenth Circuit has long recognized the relevance of previous wrongs and crimes in the context of narcotics violations. This is particularly true when the uncharged conduct is close in time and similar in method to the charged crime." Conway, 73 F.3d at 981. For these reasons, Salcido cannot show, pursuant to Fed. R. Evid. 403, that the admission of the evidence had a prejudicial effect that substantially outweighed its probative value. See Conway, 73 F.3d at 981; Easter, 981 F.2d at 1554.

Finally, while Huddleston requires a limiting instruction if requested, the fact that no curative or limiting instruction was given was not error because Salcido never requested such an instruction. See United States v. Jefferson, 925 F.2d 1242, 1258-59 (10th Cir. 1991); United States v. Record, 873 F.2d 1363, 1376 (10th Cir. 1989). Thus, the district court did not abuse its discretion in admitting the evidence.

**E**

15

Salcido's last claim of error concerns alleged prosecutorial misconduct. Salcido asserts that the prosecution's alleged comment on Salcido's failure to call additional alibi witnesses amounted to reversible error. The test for determining whether a prosecutor's comment is reversible error is "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." Knowles v. United States, 224 F.2d 168, 170 (10th Cir. 1955); see also United States v. Gomez-Olivas, 897 F.2d 500, 503 (10th Cir. 1990). We reject this claim of error.

First, Salcido does not cite any portion of the trial transcript where the prosecution allegedly commented on Salcido's failure to call additional alibi witnesses. The responsibility is with the party claiming error to reference evidence in the record that supports his claim. Our independent review of the record indicates no prosecutorial misconduct. The record indicates that the government prosecutor and defense counsel argued to the court, before closing arguments, whether the prosecution could comment on the fact that Salcido failed to call potential witnesses who were at La Cueva on January 26, 1997. III App. at 390-91. The district judge ruled that such comment was permissible. III App. at 392. But the prosecution in fact never commented on Salcido's failure to call additional alibi witnesses to the jury. Thus the prosecution never engaged in the conduct Salcido claims

16

resulted in reversible error.[5]

Accordingly, the judgment and convictions are **AFFIRMED**.

Entered for the Court


William J. Holloway, Jr.
Circuit Judge

---

[5]Even if the prosecution had made such comments, our circuit's case law supports the proposition that a prosecutor may comment on the defendant's failure to call an additional witness. See United States v. Mitchell, 613 F.2d 779, 782 (10th Cir. 1980); see also United States v. Keller, 512 F.2d 182, 186 (3d Cir. 1975)(prosecutor may comment on defendant's failure to call witness who could corroborate testimony of defendant's witness).