**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 2 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

vs.

GERARDO THOMAS GARZA, also
known as Jerry Garcia,

     Defendant - Appellant.

No. 04-4046
(D.C. No. 02-CR-42-01-JTG)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

Defendant-Appellant Gerardo Thomas Garza entered a conditional plea to

possession of a firearm by a felon, 18 U.S.C. § 922(g)(1), and possession of

methamphetamine, 21 U.S.C. § 844, reserving the right to appeal the district

court's denial of his motion to suppress. He was sentenced to 37 months

imprisonment and three years supervised release. Our jurisdiction arises under 28

U.S.C. § 1291, and we reverse.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Background

On April 19, 2002, Officers McGuire and Burnett of the Ogden City Police department conducted a "knock and talk" investigation at the Motel 6 in Ogden, Utah. They contacted the desk clerk and inquired whether there were any activities at the motel that would lead the clerk to believe that drug use or drug trafficking might be taking place. II R. at 8-9. The clerk on duty had previously been trained by the Weber-Morgan Narcotics Strike Force to look for excessive foot traffic, a high volume of phone calls, guests with local addresses, lack of a room reservation, and cash payment, as indicative of drug use and sales. II R. at 7-8. The clerk gave the officers two room numbers, indicating, without specificity as to which room, that there was an unusually high volume of telephone calls and visitors. II R. at 10, 29. The clerk also told the officers that when Rosa Reyes Ambris,[1] the sole registered occupant of one of the rooms, checked into the motel, she provided a local address, did not have a reservation for the room, and paid in cash. II R. at 36-40.

Based on this information, the officers knocked on the door of Room 133. II R. at 10. When the officers knocked on the door, a male voice asked who was there, and the officers announced themselves. II R. at 10-11, 68. After a delay,

---

[1] Ms. Ambris apparently used the surname "Reyes" on the date of the incident.

the police knocked again. Shortly thereafter, a partially clothed female, later identified as Ms. Ambris, came to the door. II R. at 11, 68. The officers identified themselves and asked if they might speak with her. Ms. Ambris responded by asking if it would be OK for her to first get dressed. II R. at 12.

When she returned to the door, she opened it and backed in so that the officers might enter. II R. at 13, 57. The district court found that the officers entered the room with Ms. Ambris's consent. I R. Doc. 37 at 9. Upon entering, the officers heard the bathroom door slam with force. II R. at 13-14. However, the bathroom door did not remain fully closed. II R. at 13-14, 72. When asked if anyone else was there, Ms. Ambris stated that her boyfriend, Mr. Garza, was in the bathroom. II R. at 13-14. The officers asked Mr. Garza to speak with them, but he refused to respond. II R. at 14.

A few moments later, one of the officers pushed the bathroom door open, revealing Mr. Garza slumped in the corner. When asked why they wanted to go in the bathroom, Officer McGuire stated that he was concerned that Mr. Garza was destroying evidence of drug use or distribution. II R. at 14. When asked the same question, Agent Burnett stated:

> I didn't think anything specifically. I thought there was one of many things that could be happening in there. Arming himself, barricading himself, destroying evidence, destroying meth lab chemicals which if mixed can be dangerous . . . . The reason you can assume why he was hiding runs the gamut. They were all bad.

II R. 75. Once in the bathroom, the officers asked Mr. Garza to show his hands. When Mr. Garza did so, the officers could see that he was holding a firearm. II R. at 76. The officers drew their weapons and took cover. Mr. Garza was arrested shortly thereafter. When taken into custody, Mr. Garza was in possession of methamphetamine. II R. at 80. After the arrest, Ms. Ambris consented to a search of the motel room, during which the officers found a small amount of marijuana. II R. at 26-27.

The district court denied Mr. Garza's motion to suppress. The parties agreed that the officers' entry into the motel room was consensual from the time of the entry until the time the officers entered the bathroom. Though the district court's order is not entirely clear, the district court apparently thought that the officers' conduct could only be justified by a finding of probable cause and exigent circumstances. I R. Doc. 37 at 5. The court then concluded that because reasonable suspicion existed, probable cause also existed. I R. Doc. 37 at 5.

The district court also found exigent circumstances. I R. Doc. 37 at 7-8. The court found that there was little evidence of criminal activity in this case, but that when the officers pushed the bathroom door open "they reasonably believed that their safety was dependent upon knowing who was in the bathroom and what he was doing." I R. Doc. 37 at 8. In the context of its exigent circumstances holding, the court also found that the officers had reasonable suspicion of

evidence destruction, possession of dangerous chemicals, and a suspect arming himself, thereby implicating the officers' safety. I R. Doc. 37 at 6-7.

Discussion

In reviewing the denial of a motion to suppress, "we view the evidence in the light most favorable to the government." United States v. Nichols, 374 F.3d 959, 964 (10th Cir. 2004). We accept the district court's factual findings unless they are clearly erroneous; however, the ultimate determination of Fourth Amendment reasonableness is a question of law which we review de novo. Id.

As a threshold matter, Mr. Garza has standing to challenge the search of the bathroom since "an overnight guest in a hotel room or in the home of a friend has a legitimate expectation of privacy in the premises." United States v. Carr, 939 F.2d 1442, 1446 (10th Cir. 1991) (discussing Minnesota v. Olson, 495 U.S. 91 (1990)). Although not a registered guest, Mr. Garza, as a guest invited by Ms. Ambris, II R. at 44, has a legitimate privacy expectation. United States v. Conway, 73 F.3d 975, 979 (10th Cir. 1995).

Turning to the merits of the appeal, the government concedes that "[t]here can be no serious dispute that the district court erred in holding that the officers' warrantless entry into the motel bathroom was justified under the exigent circumstances exception." Aplee. Br. at 8. The government urges us to uphold

the denial of the motion to suppress on a protective sweep rationale relying upon Maryland v. Buie, 494 U.S. 325 (1990). Aplee. Br. at 11. We may uphold the district court's ruling on any legal grounds supported by the record, even if our rationale differs from the district court. United States v. Edwards, 242 F.3d 928, 935 (10th Cir. 2001). We may do so when the defendant has had an opportunity to fully litigate any contested operative facts necessary to our resolution and the district court has made findings on any such facts. United States v. Henderson, 241 F.3d 638, 649 n.1 (9th Cir. 2000) ("All of the evidence is in the record and all of the relevant facts have been resolved."). It gives us some pause that the government's concession and alternate theory comes in its answer brief on appeal, thereby only giving Mr. Garza the opportunity to meet it for the first time on appeal. However, Mr. Garza does not argue that he has been unable to develop facts and meets the alternate theory on its merits. Nevertheless, the government's reliance on the protective sweep doctrine fails for two reasons.

Mr. Garza argues that the protective sweep doctrine cannot be relied upon to render the officers' search lawful since a protective sweep may only be performed incident to an arrest. See Buie, 494 U.S. at 327; United States v. Davis, 290 F.3d 1239, 1242 n.4 (10th Cir. 2002); United States v. Smith, 131 F.3d 1392, 1396 (10th Cir. 1997). The government argues that the statements in Buie and Davis are dicta, Aplee. Br. at 20-26, and that police may perform a protective

sweep without an arrest.  United States v. Gould, 364 F.3d 578, 584 (5th Cir. 2004); United States v. Taylor, 248 F.3d 506, 513 (6th Cir. 2001); United States v. Garcia, 997 F.2d 1273, 1282 (9th Cir. 1993); United States v. Patrick, 959 F.2d 991, 996-97 (D.C. Cir. 1992).

First, the Supreme Court's statement in Buie that a "protective sweep" is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others" is not dicta.  494 U.S. at 327. While the Court could have relied on facts other than that the police search in that case was incident to a lawful arrest, the Court clearly found this fact to be important, if not essential.  Buie, 494 U.S. at 330-32.  Nevertheless, even if the Court's definition of a protective sweep as a search performed incident to an arrest can be construed as dicta, "'this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements.'"  United States v. Nelson, 383 F.3d 1227, 1232 (10th Cir. 2004) (quoting Gaylor v. United States, 74 F.3d 214, 217 (10th Cir.1996)).

Just as we are not at will to overrule the Supreme Court, we also may not overrule a panel of this court absent an en banc decision.  In re Smith, 10 F.3d 723, 724 (10th Cir. 1993).  We have twice found that a protective sweep may only be performed incident to an arrest.  In United States v. Smith, this court applied

the Supreme Court's definition of "protective sweep" and upheld the admission of evidence found incident to the execution of an arrest warrant. 131 F.3d at 1396. Likewise, in Davis, this court disposed of the government's argument that police were allowed to perform a protective sweep before any arrest was made by pointing to the Supreme Court's definition of "protective sweep." 290 F.3d at 1242 n.4. Because Buie defined a "protective sweep" as a "'quick and limited search of the premises, *incident to an arrest,*'" the court found that the government's argument that a protective sweep could take place before an arrest must fail. Id. (quoting Buie, 494 U.S. at 327) (emphasis in original).

Even assuming that Buie's protective sweep doctrine encompasses circumstances other than an officer's presence for purposes of making an arrest, no objectively reasonable belief existed that the bathroom contained a person posing a danger to either the officers or others. In general, a protective sweep is a brief search of a premises during an arrest to ensure officer safety if the officers have a reasonable belief of danger. Buie, 494 U.S. at 327. The Fourth Amendment allows a protective sweep if police have "a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[s] the officer in believing that the area swept harbor[s] an individual posing a danger to the officer or others." Id. (internal quotations and citations omitted). Protective sweeps are justified by the interest

of the officers in assuring themselves that the premises are "not harboring other persons who are dangerous and who could unexpectedly launch an attack." Id. at 333. Thus, a protective sweep is "appropriate only where officers reasonably perceive an immediate danger to their safety." United States v. Owens, 782 F.2d 146, 151 (10th Cir. 1986). "We should evaluate the circumstances as they would have appeared to prudent, cautious and trained officers." United States v. Rhiger, 315 F.3d 1283, 1288 (10th Cir. 2003) (internal quotations and citations omitted).

The officers' protective sweep of the hotel room, including forcing the bathroom door open, fails to comply with these standards. As stated by the government, the specific and articulable facts the officers possessed, after speaking with the front desk attendant at the motel, were that there were two rooms in the motel that had questionable occupants, in that (1) the rooms had been rented by local customers who paid in cash, (2) there had been a high volume of foot traffic and telephone calls to and from one of the rooms, and (3) the hotel was located in an area with past criminal activity. The record does not specify which of the two rooms had a high volume of foot traffic or telephone calls. Aplee. Br. at 17.

However, the officers had no knowledge of who occupied either room or if the occupants had histories of firearms violations, drug trafficking, or violent crime. II R. at 33, 66-67; see United States v. Tisdale, 921 F.2d 1095, 1097 (10th

Cir. 1990) (finding reasonable belief of danger based in part on an officer's knowledge of occupant's previous firearm violations).  Further, the officers were conducting a warrantless "knock and talk" investigation.  This is unlike Buie where the Court emphasized that the officers had an arrest warrant allowing the officers to search anywhere in the house that Buie might have been found.  Buie, 494 U.S. at 330.  Moreover, as opposed to situations where officers perform a protective sweep after an arrest, Ms. Ambris voluntarily consented to the officers' entry.

Once in the room, the officers did not notice anything particularly suspicious about Ms. Ambris or the room, such as evidence of drug use or drug trafficking.  II R. at 29, 33, 82; see United States v. Cavely, 318 F.3d 987, 995-96 (10th Cir. 2003) (finding reasonable belief of hidden danger where the police had previously recovered firearms in the house, the suspect arrested had fuel used to make methamphetamine on his hands, possessed large amounts of cash and methamphetamine, and admitted that other people were in the house).

After Ms. Ambris consented to the officers' entry, the officers heard the bathroom door shut and knew that the male who had first responded to their knock was in the bathroom and refused to communicate with them.  III R. at 81.  While it is true that the district court found that the officers had reasonable suspicion of criminal activity and that the person in the bathroom posed a safety

threat (in the context of a different analysis), there simply are not specific, articulable facts in this record that distinguish this from any time a person in a bathroom (one of the most private rooms in a dwelling) declines a consensual encounter with the police.

The government argues that Mr. Garza's refusal to respond and forceful closure of the bathroom door was "suspicious, evasive, and arguably threatening," such that, combined with the other facts known at the time, the officers had a reasonable belief that Mr. Garza and Ms. Ambris were involved in criminal activity, namely distribution of narcotics. Aplee. Br. at 18. Because drug distribution is "likely to involve the use of weapons," cf. Terry v. Ohio, 392 U.S. 1, 28 (1968) (determining that a robbery is likely to involve weapons), the government argues that the officers had a reasonable basis to fear for their safety. Aplee. Br. at 19.

We are not persuaded. As previously discussed, Ms. Ambris freely consented to the officers' entry, thus exhibiting a willingness to cooperate. Once in the room, the officers did not smell drugs or hear running water, which might indicate the possible disposal of narcotics. II R. at 33, 83. Because Mr. Garza had no obligation to respond to the officers, the government's argument that Mr. Garza's failure to respond created a safety threat sufficient to allow a protective sweep carries little weight. In short, the government's theory simply is not linked

to specific evidence that would support it as to this defendant--the increased foot traffic, the phone calls, the reputation of the neighborhood, the local customer paying for a room in cash, and the male occupant of the room shutting the bathroom door (perhaps to use the facilities) do not add up to a "reasonable belief" that the bathroom "harbored an individual posing a danger to the officer or others." Buie, 494 U.S. at 327.

REVERSED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

04-4046, *United States v. Garza*
**TYMKOVICH**, J., concurring.

I agree with the majority that the "protective sweep" conducted by law enforcement officers was not anchored by reasonable suspicion. I therefore concur.

I write separately to note some reservations about whether a protective sweep can ever be justified absent an arrest and the majority's application of *Maryland v. Buie*, 494 U.S. 325 (1990). In *Buie*, the Supreme Court articulated a doctrine of the warrantless protective sweep, a "quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers and others." *Id.* at 327. The Court justified the sweep "as a precautionary matter," that could be conducted

> without probable cause or reasonable suspicion, [to] look in closets
> and other spaces immediately adjoining the place of arrest from
> which an attack could be immediately launched. Beyond that,
> however, we hold that there must be articulable facts which, taken
> together with the rational inferences from those facts, would warrant
> a reasonably prudent officer in believing that the area to be swept
> harbors an individual posing a danger to those on the arrest scene.
> This is no more and no less than was required in *Terry* and *Long*.

*Id.* at 334.

Two recent cases in this circuit have cited to *Buie*. The first, a 2002 case, involved the illegal, warrantless search of a home. The panel declined to apply the protective sweep rationale where the search was neither incident to an arrest nor supported by reasonable suspicion. *See United States v. Davis*, 290 F.3d 1239

(10th Cir. 2002).  The second case, in 2004, extended *Buie* to situations involving "protective detentions."  That panel held that in addition to a protective sweep the police may conduct a protective detention of individuals as long as there is a "reasonable and articulable suspicion of potential danger to the arresting officers."  *United States v. Maddox*, 388 F.3d 1356, 1367 (10th Cir. 2004).

The question then is whether those cases, together with *Buie*, lay down a flat, per se rule banning protective sweeps by law enforcement in every other context.  That seems doubtful to me.  We already know that the Supreme Court has allowed concern over officer safety to justify limited searches in non-arrest street encounters, *see Terry v. Ohio*, 392 U.S. 1 (1968), and automobile stops, *see Michigan v. Long*, 463 U.S. 1032.  *Buie* was a natural extension of the logic of those cases.

Against this legal backdrop, the Fifth Circuit sitting en banc recently confronted the very question of whether a protective sweep accompanied by a reasonable suspicion of danger must always be incident to an arrest.  The court answered no.  In *United States v. Gould*, 364 F.3d 578, 588 (5th Cir. 2004), the court considered a situation where officers entered a mobile home with the permission of an occupant.  During the encounter, the officers developed safety concerns, and, upon entering the home's bedroom, found firearms.  *Id.* at 591. Looking to *Buie*, the court concluded that the Supreme Court's holding does not

flatly bar protective sweeps during a lawful consensual encounter where officers possess a reasonable suspicion that the home harbors an individual who poses a threat to their safety. *Id.* at 584-593. The *Gould* Court's understanding of *Buie* would allow a protective sweep where (1) the police enter a home lawfully, (2) the sweep is supported by reasonable suspicion that the area to be swept harbors a dangerous individual, (3) the sweep is a cursory inspection for persons, and (4) the sweep is short, lasting no longer than necessary to dispel the threat. *Id.* at 587.

Thus, *Gould* suggests that a protective sweep may be constitutional outside the arrest context if officers, pursuant to a lawful consensual encounter, develop a reasonable suspicion that their safety is endangered by a person hiding nearby.[1]

This, however, is not such a case. I agree with the majority that at the time of the sweep the officers here did not have a reasonable suspicion that the motel room harbored an individual posing a threat to them. The protective sweep was therefore not supportable.

---

[1] A few other courts have also resisted a per se approach to *Buie*. *See, e.g.,* *United States v. Taylor*, 248 F.3d 506 (6th Cir. 2001) (allowing protective sweep without an arrest); *United States v. Patrick*, 959 F.2d 991 (D.C. Cir. 1992) (allowing protective sweep after consensual entry).