**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 18 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

DOANE KEITH THOMAS,

     Defendant - Appellant.

No. 03-5041

Appeal from the United States District Court
for the Northern District of Oklahoma.
(D.C. No. 00-CR-63-H)

Barry L. Derryberry, Research and Writing Specialist (Paul D. Brunton, Federal
Public Defender, and Jack Schisler, Assistant Federal Public Defender, with him
on the brief), Tulsa, Oklahoma, for Defendant-Appellant.

Timothy L. Faerber, Assistant United States Attorney (David E. O'Meilia, United
States Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.

Before **EBEL, ANDERSON** and **McCONNELL**, Circuit Judges.

**EBEL**, Circuit Judge.

Defendant Doane Keith Thomas was convicted under 18 U.S.C. § 922(g)(1)

as a felon in possession of a firearm. He now challenges the district court's

refusal to suppress the firearm as evidence. We hold that exigent circumstances

justified the police officers' warrantless entry into the apartment from which the firearm was retrieved, and that once inside the apartment the officers were permitted to seize the gun from plain view as evidence of a crime. Accordingly, we AFFIRM.

## BACKGROUND

Tulsa police officer Ron Kawano was on patrol near a four-unit apartment building after midnight on the morning of January 1, 2000. Kawano observed a man run from the apartment building to a car, say something to the effect of "go ahead and kill me," and run back to the stairwell of the apartment building. Kawano concluded that the man had gone upstairs, and he decided to investigate the situation.

As he approached the apartments, Kawano heard loud voices arguing in one of the two upstairs units. He walked up a stairway to determine where the argument was taking place, and as he did so the fight grew louder. Kawano heard a female voice say "you better put that gun away before I call the police" in a tone he described as angry, scared and loud. At that point, Kawano drew his weapon.

When he reached the top of the stairs, the door to one of the apartment units was open and Kawano could see about six or seven people inside. Among them was Defendant Thomas, who was holding a gun.

Thomas then started to move, and Kawano ordered him to stop. Thomas did not comply. Instead, Thomas ran with the gun towards a hallway near the back of the apartment, stashed the gun in a "closet type storage area," and continued to run down the hallway into a bedroom. Meanwhile, a screaming woman ran across the apartment in the opposite direction.

Kawano ordered all of the occupants out of the apartment. Everyone whom he had observed in the apartment, including Thomas, obeyed that order. Kawano had no way of knowing whether or not there were others who remained hidden in the apartment. He and other officers then conducted a warrantless search of the apartment "[l]ooking for anybody who could have been harmed, or injured, dead, anybody inside the apartment." Kawano testified that the purpose of the search was to ensure that "nobody had been harmed ... [and] for our safety, to ensure that there was nobody there who could, well obviously grab the one obvious weapon the revolver and use it against us." During the search of the apartment, the parties agree that the officers saw the gun in plain view and seized it.

Police later learned that the apartment unit belonged to Thomas' aunt and uncle. Thomas testified that he had been invited there to celebrate New Year's Eve, that he had intended to spend the night there, and that it was "okay" with his aunt and uncle for him to spend the night there. Also, police later learned that Thomas had previously been convicted of a felony offense.

Thomas was charged under 18 U.S.C. § 922(g)(1) for possessing a firearm after having been convicted of a felony. He challenged the legality of the officers' entry into the apartment and seizure of the gun, and the district court denied his motion to suppress the weapon. Thomas entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion.

## DISCUSSION

The district court concluded that Thomas had standing to challenge the officers' entry into the apartment and seizure of the gun, and that both of those actions were constitutional on the merits. We agree.

### A.  Standing

Fourth Amendment "standing" refers to whether the party challenging a search or seizure personally has a legitimate expectation of privacy that was implicated by the challenged governmental action. See Minnesota v. Carter, 525 U.S. 83, 87-88 (1998); United States v. Jones, 213 F.3d 1253, 1260 (10th Cir. 2000). We review this question de novo, considering the evidence in the light most favorable to the district court's decision. United States v. Gordon, 168 F.3d 1222, 1225 (10th Cir. 1999).

The Supreme Court has explained that overnight guests have a reasonable expectation of privacy in the home of their host.  Minnesota v. Olson, 495 U.S. 91, 98 (1990).  Further, we have held that even social guests who do not stay the night have a reasonable expectation of privacy in the host's home and may therefore challenge a search of the home on Fourth Amendment grounds.  United States v. Rhiger, 315 F.3d 1283, 1286-87 (10th Cir. 2003) (Defendant had stayed the night on prior occasions and was a regular social guest in the home, even though there was no showing that he was staying overnight on the occasion of the search).[1]

In light of this precedent, it is evident that Thomas may challenge the search of his aunt and uncle's home.  Thomas testified that he was there as a social guest to celebrate New Year's Eve.  Moreover, he testified that he planned to spend the night there and that his plans were "okay" with his aunt and uncle.  Therefore, the search of the apartment and seizure of the gun there implicated Thomas' legitimate privacy interests.

---

[1]  In contrast, a person who is present at another's home, with permission, simply for the purpose of consummating a business transaction does not have a reasonable expectation of privacy there.  Carter, 525 U.S. at 90-91.

B.  Entry into the Apartment

"[A]bsent exigent circumstances, the firm line at the entrance to the house may not reasonably be crossed without a warrant." Kirk v. Louisiana, 536 U.S. 635, 636 (2002) (internal quotation marks and alterations omitted).  We review the question of whether exigent circumstances justified a warrantless entry into a home de novo, evaluating the circumstances as they would have appeared to prudent, cautious and trained officers at the time.  See United States v. Gutierrez-Hermosillo, 142 F.3d 1225, 1229 (10th Cir. 1998); United States v. Davis, 290 F.3d 1239, 1243 (10th Cir. 2002).  In the instant case, we hold that the officers' entry into the apartment was justified by exigent circumstances, namely their need to guarantee the safety of themselves and others.

The Supreme Court has recognized several types of exigent circumstances that may justify a warrantless entry into a home, including the hot pursuit of a fleeing felon, the imminent destruction of evidence, the need to prevent a suspect's escape, or the risk of danger to police officers or other people inside or outside the home.  Minnesota v. Olson, 495 U.S. 91, 100 (1990).

In risk of personal danger cases, the basic aspects of the exigent circumstances exception are (1) the officers must have reasonable grounds to believe that there is an immediate need to protect the lives or safety of themselves or others; (2) the search must not be motivated by an intent to arrest or seize

evidence; and (3) there must be some reasonable basis, approaching probable cause, to associate the emergency with the place to be searched. Davis, 290 F.3d at 1242.

To be sure, our determination as to whether exigent circumstances existed will depend on the unique facts of the controversy before us. Id. Yet we are guided in our analysis by cases in which courts have held there to be exigent circumstances under analogous conditions.

In United States v. Reed, for example, police officers went to a suspect's home as part of a criminal investigation and saw a man sleeping on the couch with a sawed-off shotgun resting nearby. 935 F.2d 641, 642 (4th Cir. 1991). The Fourth Circuit held that the officers had reasonable grounds to believe that they needed to enter the home in order to guarantee their own safety. Id. at 643. "Standing at the threshold of Reed's home and uncertain about how many persons were present in the trailer, the officers in this case were faced with an inherently dangerous illegal weapon that could have ... possibly [been] used against them. Viewing the situation in its totality, the troopers could have reasonably found exigent circumstances." Id.

Similarly, in United States v. Burgos, the Eleventh Circuit held there were exigent circumstances to enter the defendant's home after officers observed boxes filled with weapons being shipped there. 720 F.2d 1520, 1526 (11th Cir. 1983).

"The agents were faced with a house laden with arms and an unknown number of people inside. ... Only by entering the house and searching for persons and weapons could the agents have control of all weapons which could be used against them or to effect an escape." Id.

Like Reed and Burgos, the officers in the instant case faced a situation in which there were firearms inside the home, it was unclear how many people were inside the home, and the circumstances gave rise to a reasonable fear that the firearms might be used against the officers or others. The officers had just broken up a heated argument in which a firearm had been brandished, one of the participants in that argument had defied police orders and stashed the gun in a rear area of the apartment, and the officers had no way of knowing if there were others in the apartment with access to the gun.

Under the circumstances of this case, we are satisfied that the officers had reasonable grounds to believe there was an immediate need to ensure their safety and the safety of others by guaranteeing that no one remained in the apartment. Further, as Officer Kawano testified, safety concerns (not an intent to seize evidence) motivated the officers' entry into the apartment, and the emergency was clearly associated with the location searched. The warrantless entry was therefore justified by exigent circumstances. Cf. Davis, 290 F.3d at 1242.

"The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." Warden v. Hayden, 387 U.S. 294, 298-99 (1967); see also United States v. Wicks, 995 F.2d 964, 970 (10th Cir. 1993) ("[O]fficers may ... conduct a warrantless search if they believe that their own lives or the lives of others are at risk."). In their attempt to subdue a chaotic armed struggle, the officers in this case were not limited to ordering the occupants whom they had seen out of the home and trusting their safety to the hope that there might be no one else inside who could use the gun stashed there against them.

C. Seizure of the Firearm

Under the plain view doctrine, police officers may properly seize evidence of a crime if (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent (i.e., there was probable cause to believe it was contraband or evidence of a crime), and (3) the officer had a lawful right of access to the object. United States v. Sparks, 291 F.3d 683, 690 (10th Cir. 2002). We review de novo the validity of a seizure of evidence under the plain view doctrine. United States v. Silkwood, 893 F.2d 245, 247 (10th Cir. 1989).

As noted above, a warrantless entry into a home justified by a risk of danger to officers or others must not be motivated by an intent to obtain evidence. United States v. Davis, 290 F.3d 1239, 1242 (10th Cir. 2002). However, once lawfully present in the home due to exigent circumstances, the plain view doctrine applies, and police may seize incriminating evidence found in plain view within the officer's lawful right of access. See Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971) ("Where the initial intrusion that brings the police within plain view of such an article is supported, not by a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate.").

In the instant case, officers were lawfully within the apartment for the reasons discussed above, and Thomas concedes that the gun was then in their plain view. There was probable cause to believe that Thomas had used the gun to commit one or more state law offenses during the preceding argument, and the gun served as evidence of those crimes.[2] Finally, nothing impeded the officers'

---

[2] Most clearly, there was probable cause to believe that Thomas engaged in reckless conduct while possessing a firearm in violation of Okla. Stat. tit. 21, § 1289.11. Oklahoma courts have held this statute to be applicable in cases in which a defendant brandished a gun in a dangerous situation and implied willingness to use it. See Reynolds v. State, 617 P.2d 1357, 1360 (Okla. Crim. App. 1979); Culpepper v. State, 507 P.2d 561, 562-63 (Okla. Crim. App. 1973). Here, officers observed Thomas carrying the gun during a loud argument and heard a woman call out "put that gun away before I call the police." That is enough to demonstrate a "reasonably fair likelihood of criminal conduct." Cf. United States v. Gordon, 173 F.3d 761, 766-67 (10th Cir. 1999).

lawful right of access to the firearm.  Because all of the elements of the plain view exception are satisfied, it was proper to seize the gun at that time.


### D.  Conclusion

For these reasons, we hold that officers reasonably entered the apartment without a warrant under exigent circumstances, and while there properly seized the firearm as evidence of a crime.  The district court correctly refused to suppress that evidence on Fourth Amendment grounds.  We AFFIRM.