**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RICHARD E. BELISLE,

Defendant-Appellant.

No. 04-3418

(D. of Kan.)

(D.C. No. 03-CR-40148-JAR)

**ORDER AND JUDGMENT** *

Before **BRISCOE** , **BALDOCK** , and **TYMKOVICH** , Circuit Judges.

Defendant-Appellant Richard Belisle was charged with possession of two rifles while being prohibited from possessing firearms pursuant to 28 U.S.C. § 922(g). He appeals the district court's denial of his motion to suppress the firearms evidence, which was obtained during a warrantless search of his residence.

We affirm.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## I. Background

After receiving a report of a disturbance involving a gun at an apartment complex, two officers from the Topeka police department visited the complex to investigate. Officer Ross Gustafson and another officer arrived at 12:23 a.m. Officer Gustafson subsequently interviewed Laura Boeckmann, the resident who had phoned the police. Boeckmann explained that her neighbor Amelia Belisle had asked to use Boeckmann's telephone, and that Ms. Belisle was "distraught" because "some people apparently inside of their apartment causing trouble with her husband. And that there was some friends in the house." ROA, Vol. II at 7. According to Boeckmann, Ms. Belisle had agreed Boeckmann should retrieve the child from the apartment. Boeckmann had therefore entered the Belisles' apartment, where she encountered defendant Richard Belisle sitting on a couch. Mr. Belisle was pointing a gun at her. Boeckmann told Gustafson she had been "startled" and "scared," but she took the child and returned to her own apartment. ROA, Vol. II at 9. No words were exchanged between Boeckmann and Mr. Belisle. According to Boeckmann, several minutes later, the child "ran back across to [the Belisle apartment]." ROA, Vol. II at 10. Ms. Belisle also returned to her apartment. Boeckmann told Gustafson she notified the police out of "concern[] for the safety" of the situation. ROA, Vol. II at 10.

After gathering this information from Boeckmann, Officer Gustafson knocked on the Belisles' apartment door. Gustafson testified that "with the circumstances of a weapon possibly involved, we, of course, want[ed] to get him out [of the apartment] as fast as we [could.]" ROA, Vol. II at 12. Accordingly, Gustafson asked Mr. Belisle to step outside the apartment. Mr. Belisle complied with this request.

Initially, Belisle refused to give Officer Gustafson his name and responded to Gustafson's questions in a "standoffish" manner. ROA, Vol. II at 14. When Gustafson asked whether there were guns or persons other than his daughter and wife in the apartment, Mr. Belisle answered in the negative. He claimed Boeckmann had not in fact seen a gun, but had rather seen a knife which he pointed at her "simulating a gun."

At some point during this conversation, Detective Kent Biggs arrived on the scene. Biggs overheard the exchange between Officer Gustafson and Mr. Belisle, and later characterized Belisle's demeanor as "evasive." Detective Biggs did not speak to Officer Gustafson directly about the Boeckmann interview, but knew of the background facts from reports on the police radio. Detective Biggs later testified that because he thought Gustafson had Mr. Belisle "under control," he "put [his] focus . . . towards the residence . . . to make sure everybody was safe inside because of the nature of the call." ROA, Vol. II at 45.

Accordingly, while Officer Gustafson continued his conversation with Belisle, Biggs entered the Belisles' apartment through the front door, which was cracked open two to three inches. He did not request permission or knock. Upon entering, Biggs encountered Ms. Belisle and the child in the apartment living room. Biggs asked Ms. Belisle "for the location of the gun," but she denied any knowledge of a gun. Using a ruse, he told Ms. Belisle that her husband had admitted there was a gun in the apartment. She responded by disclosing the location of a rifle, indicating it was hidden in a bedroom between the mattress and the wall.

Detective Biggs proceeded to the bedroom, where he encountered a man who appeared to be "faking sleeping" on the floor in the bedroom. He secured the man and retrieved a rifle located where Ms. Belisle had said it would be. Biggs then questioned Ms. Belisle about the gun, and she explained she had been "asking [Belisle] to get rid of it . . . due to the small child," and that she was "mad" at him for not doing so. ROA, Vol. II at 51. Biggs asked her for consent to search the residence to see if there were any other weapons, later testifying that "all [he] was interested in at that point was getting the weapons out of the house." ROA, Vol. II at 52. Ms. Belisle stated that there were no other guns in the house that she was aware of, but granted consent to search. During the search, Biggs

returned to the same bedroom where the first gun was found. In the closet he found a second rifle, which he removed and took to his car.

Because he had previously been convicted of a felony, Belisle was charged with a single count of possessing a firearm while being a prohibited person. He moved to suppress the evidence and the district court denied his motion. Belisle entered a conditional guilty plea, specifically reserving the right to appeal the district court's denial of his motion to suppress. The district court sentenced Belisle to 33 months in prison.

## II. Analysis

Belisle makes three arguments on appeal: (1) no exigent circumstances permitted a warrantless entry into the apartment; (2) the police lied to induce his wife's consent to search, thereby rendering it involuntary; and (3) in any event, Ms. Belisle's consent was the fruit of the unlawful warrantless entry into his apartment.

We review the question of whether exigent circumstances justified a warrantless entry into a home de novo, evaluating the circumstances as they would have appeared to prudent, cautious and trained officers at the time. *See United States v. Gutierrez-Hermosillo*, 142 F.3d 1225, 1229 (10th Cir. 1998); *United States v. Davis*, 290 F.3d 1239, 1243 (10th Cir. 2002); *United States v. Thomas*, 372 F.3d 1173, 1177 (10th Cir. 2004).

## A. Exigent Circumstances

It is well settled that "absent exigent circumstances, the firm line at the entrance to the house may not reasonably be crossed without a warrant." *Kirk v. Louisiana*, 536 U.S. 635, 636 (2002) (internal quotation marks omitted). The burden is on the government "to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries." *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984). The Supreme Court has recognized several types of exigent circumstances that may justify warrantless entry into a residence, including "the hot pursuit of a fleeing felon, the imminent destruction of evidence, the need to prevent a suspect's escape, or the risk of danger to police officers or other people inside or outside the home." *Thomas*, 372 F.3d at 1177 (citing *Minnesota v. Olson*, 495 U.S. 91, 100 (1990)). In this case, we consider the last exception, whether the entry was justified by the risk of danger to the police and others.

In "risk of danger" cases such as this one, we examine three basic elements to determine whether exigent circumstances existed: (1) officers must have reasonable grounds to believe an immediate need to protect the lives or safety of themselves or others exists; (2) the search must not be motivated by an intent to arrest or seize evidence; and (3) officers must have some reasonable basis,

approaching probable cause, to associate the emergency with the place to be searched. *United States v. Davis*, 290 F.3d 1239, 1242 (10th Cir. 1986).

These three elements are met here.

### 1. Immediacy of Threat

The government argues warrantless entry was justified by officers' objectively reasonable concern that lives were in danger. The district court agreed, based on the following evidence: (1) Ms. Belisle's report to her neighbor, Laura Boeckmann, that several people were inside her apartment threatening her husband; (2) Boeckmann's report that Ms. Belisle was visibly distraught as a result of these threats; (3) Boeckmann's subsequent encounter in the apartment where Mr. Belisle pointed a gun at her; (4) the presence of a small child in the Belisles' apartment during all of these events; and (5) the officers' belief that the apartment still harbored the guns and other persons.

Belisle offers an alternate interpretation of these events. First, regarding Boeckmann's report that he pointed a gun at her, Mr. Belisle argues that he made no threats to her and permitted her to remove his daughter from the apartment. According to Belisle, viewed objectively, this encounter represents neither imminent danger nor immediacy. Second, Belisle argues that Boeckmann's report about Ms. Belisle's fears was vague and unclear, and that "the police simply did not know what was going on" when they commenced the search. Third, Belisle

contends that the presence of children does not require him to forfeit his Fourth Amendment rights. Finally, Belisle argues there was "no need whatsoever to protect anyone."

Belisle's alternate interpretation of the facts, however, gives us little guidance. Multiple ways to view the facts of a matter always exist. "In evaluating whether exigent circumstances existed, we examine the circumstances 'as they would have appeared to prudent, cautious, and trained officers.'" *Roska v. Peterson*, 304 F.3d 982, 990 (10th Cir. 2002) (quoting *United States v. Anderson*, 154 F.3d 1225, 1233 (10th Cir. 1998)). While the exigent circumstances exception to the warrant requirement is narrow, and must be "jealously and carefully drawn," *id.*, it does not require the officer to suspend common sense in light of the circumstances at hand. Nor does it require us to compartmentalize the facts and look at them in isolation.

In reviewing this record, we agree with the district court that there was sufficient evidence to lead a prudent officer to conclude that exigent safety risks justified the search. Several factors guide our conclusion. First, officers knew based on Boeckmann's report that an argument involving third parties had occurred late at night in the Belisles' apartment that visibly disturbed Ms. Belisle, enough that she was afraid to reenter the apartment and retrieve her two-year-old daughter. They also knew Boeckmann, after agreeing to get the child, was

confronted by Mr. Belisle pointing a gun at her, in the presence of the child. Third, while Mr. Belisle denied the presence of guns or strangers, the officers found his statements unconvincing. At the time Biggs entered the apartment, the officers had reason to believe that the apartment might have contained (1) at least one gun; (2) at least one individual and possibly others who had threatened Mr. Belisle; and (3) Ms. Belisle and the child. Given these facts, officers could easily have presumed that danger was afoot, and it was reasonable for them to believe it was necessary to enter the apartment quickly.

Belisle argues our existing case law requires a different conclusion, citing *United States v. Thomas*, 372 F.3d 1173 (10th Cir. 2004). In *Thomas*, an officer was in pursuit of a man running through an apartment complex yelling "go ahead and kill me." The officer overheard a female voice say "you better put that gun away before I call the police." *Thomas*, 372 F.3d at 1175. The officer then came upon an open apartment door through which he could see six or seven people, one of whom was holding a gun. The armed man ran through the apartment and deposited his gun in a closet. *Id.* A warrantless search ensued, during which officers located and confiscated the gun. *Id.* This court determined that the officers

> faced a situation in which there were firearms inside the home, it was
> unclear how many people were inside the home, and the
> circumstances gave rise to a reasonable fear that the firearms might
> be used against the officers or others.

*Id.* at 1177. Such is the case here.

Officers learned from Boeckmann (based on Ms. Belisle's statements) that a gun and various unknown individuals were in the apartment in the presence of a young child. While the officer in *Thomas* actually saw a weapon himself, the same principles apply. In other words, we believe the source of the information is important only to the extent the source is unreliable, and here officers had no reason to doubt Boeckmann's truthfulness. What they did know was that a risk to themselves and others still existed if the apartment contained an armed man. Accordingly, it was objectively reasonable for Detective Biggs to be concerned about the presence of weapons and unknown individuals, and it was objectively reasonable for him to seek out such weapons and individuals and secure them.[1]

## 2. Intent

Belisle also argues that Detective Biggs was motivated by the desire to look for a gun, not to check on the welfare of individuals inside the apartment. Biggs testified, however, that his reason for entering the apartment was to "make sure the occupants were safe." The district court credited this testimony, observing

---

[1] Regarding the search for the second weapon, the district court made a factual determination that Biggs need not have even asked Ms. Belisle for consent to search the apartment for additional guns given the fact that he believed there could be other individuals with weapons present. The district court further determined that following the discovery of the first weapon, "exigent circumstances still existed[.]" Dist. Ct. Order at 11. Nothing in the record or the appellant's brief convinces us that this determination should be disturbed.

that Biggs first checked on the welfare of the child *before* searching for the gun. While it is true that Biggs also asked about the location of the rifle, he explained that if "someone else had the gun, I needed to know that before I confronted them." In light of his concern that there was someone in the apartment, his concern was reasonable. And in interpreting Biggs's actions, the district court found that "Detective Biggs's actions suggest that safety was his primary concern."

In reviewing the denial of a motion to suppress, "'[w]e must accept the trial court's findings of fact unless they are clearly erroneous.'" *United States v. Carr*, 939 F.2d 1442, 1443 (10th Cir. 1991) (quoting *United States v. Gay*, 774 F.2d 368, 375 (10th Cir. 1985)). Further, "[a] trial court's determinations which rest upon credibility and reasonable inferences will not be set aside unless clearly erroneous." *Carr*, 939 F.2d at 1448. We have no reason to doubt the district court's factual finding in this case that the officers' motivation was to mitigate a risk of danger. Upon reasonably entering the apartment, a sweep for weapons was a natural response to the risk presented.

### 3. Exigent Circumstances Pointed to the Apartment

Finally, we assess whether the district court erred in finding reasonable grounds to associate the threat with the apartment. We agree with the district court that "the combination of the reported disturbance in the apartment,

Boeckmann's statement that the defendant had pointed a gun at her, that other individuals were inside the apartment and possibly causing problems," and "the presence of a small child" made it reasonable to associate the apartment with an emergency situation.

**B. Consent to Search the Apartment**

Belisle also argues (1) that the police lied to induce his wife's consent to search the apartment, thereby rendering it involuntary; and (2) in any event, the consent was the fruit of unlawful warrantless entry into his residence. Because exigent circumstances excused both the warrantless entry of the Belisles' apartment and the subsequent search for weapons, we need not address the validity of Ms. Belisle's consent.

### III. Conclusion

Accordingly, we AFFIRM the district court's inclusion of the firearm evidence and DISMISS Belisle's appeal.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge