**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 11, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAIMOND D. MARTIN,

Defendant - Appellant.

No. 05-3306

(D. Kansas)

(D.C. No. 04-CR-20100-CM)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **ANDERSON**, and **BEAM**,[**] Circuit Judges.

Defendant-Appellant Jaimond D. Martin pled guilty to one count of possession with intent to distribute fifty grams or more of crack cocaine, in violation of 21 U.S.C. § 841(a) and (b)(1)(A)(iii). He appeals the denial of his motion to suppress the cocaine which was found in his car at the time of his arrest. We affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable C. Arlen Beam, United States Circuit Judge, Eighth Circuit Court of Appeals, sitting by designation.

## BACKGROUND

On July 11, 2004, Kansas City, Kansas, police officer Brian Whisner received a call from dispatch directing him to respond to an alleged aggravated assault. Dispatch told Officer Whisner that an elderly woman had called to inform the police that a young African-American male in his 20's, later identified as defendant Martin, had parked his car, described as a red and silver older model Chevrolet with tags reading "CLASSIC," on her property. The woman further stated that, when her husband had gone outside to confront the young man, the young man had pointed a gun at him.[1]

While the officer was driving to the location of the alleged assault, he saw a car matching the description of the car involved in the assault. Officer Whisner testified that, when the driver of the Chevrolet (defendant Martin) saw the officer's police vehicle, he "whipped off" the street and "whipped off" into a driveway. Tr. of Suppression Hr'g at 8-9, R. Vol. II. The driveway turned out to belong to Martin's parents. Furthermore, the Chevrolet was registered at that address in Martin's name.

Officer Whisner testified that he parked his police vehicle on the street behind a fir tree. He stated that Martin ran from his car, not in the direction of

---

[1]Officer Whisner testified that he learned "probably two hours after" he arrested Martin that the victim of the alleged aggravated assault had told an investigating officer that Martin had returned the gun to a neighbor. Tr. of Suppression Hr'g at 30, R. Vol. II.

the front door of the house, but rather towards nearby woods. Whisner further testified that he drew his gun and ordered Martin to stop because he observed something in Martin's hand which the officer thought was a gun. As it turned out, Martin held a cell phone in his hand.

Officer Whisner apprehended Martin, walked him to the front of the police car, handcuffed him, patted him down and placed him under arrest. He found no contraband or weapon on Martin. The officer then placed Martin in the caged area in the back of his police vehicle.

The police car was approximately forty feet from Martin's car. Whisner testified that the driver's door of Martin's car was open and the engine running. He further testified that he walked over to the car "to secure th[e] vehicle," id. at 12, and because "possibly [there would be] a gun laying around or on the ground nearby." Id. at 13. As he stood in front of the open door of the car, he saw a "big ball of what [he] believed [to be] crack cocaine" lying "[r]ight smack in the driver's seat." Id. Officer Whisner also saw a Crown Royal bag on the floorboard, out of which more crack cocaine and marijuana spilled.

At that point, Whisner called for back-up. Other officers arrived and took photographs of the scene. Field tests revealed the drugs were indeed cocaine and marijuana.

Two defense witnesses contradicted certain parts of Whisner's testimony. Trina White, an acquaintance of Martin's whose best friend was Martin's

neighbor, testified that she was visiting her friend the morning of Martin's arrest. She testified that she saw Martin drive slowly (five miles per hour) up the street, with a police car following him slowly. She further testified that Martin got out of his car, closed the car door, and began walking up the front steps of his parents' house. White also testified that Whisner parked his police car right behind Martin's car in the driveway of Martin's parents' house. Another neighbor, Antonio Johnson,[2] similarly testified that he saw Martin drive slowly down the street, with a police car following him, and that Martin got out of his car, closed the car door and proceeded up the front steps of the home. In contradiction to White's testimony, Johnson testified that the police car was parked on the street, not in the driveway.[3]

After listening to this testimony at the suppression hearing, the district court noted the conflicts between the various accounts given:

> [T]he court would find that the court heard conflicting testimony as to the events preceding the seizure of the evidence at issue[.] Officer Whisner testified that when he encountered defendant's vehicle defendant sped away and whipped into the driveway of his residence and that defendant ran from his vehicle to elude the police officer leaving his vehicle's side door open. Defendant's witnesses,

---

[2]Johnson is married to White's best friend, whom White was visiting the morning of Martin's arrest.

[3]Both Johnson and White observed Martin's arrest from Johnson's house. Johnson was on his back porch and White was on the front porch. Johnson testified that his back porch was perhaps "600 feet," or at least "one and a half" football fields length, away from Martin's driveway. Tr. of Suppression Hr'g at 93-94, R. Vol. II.

specifically Trina White and Antonio Johnson, testified that they saw defendant drive very slowly down the street with a police vehicle following and that after closing defendant's driver's side door defendant walked up to the door of his residence before a police officer motioned for him to come to his car and calmly spoke to him from the driveway. It's clear to the court that there was conflicting testimony . . . . In light of the conflicting testimony presented, quite frankly, the court has serious concerns about Officer Whisner's testimony up to the point in time when defendant was placed into handcuffs. And that's because defendant's witnesses, Miss White and Mr. Johnson, appeared credible to the court and did not appear to have any motive to testify dishonestly.

Tr. of Suppression Hr'g at 130-31. R. Vol. II. The court nevertheless denied Martin's motion to suppress, stating "even if this court were to rely solely on defendant's witnesses . . . the seizure of the crack cocaine and marijuana in defendant's vehicle is still a lawful seizure . . . under the plain view and inventory exceptions to the warrant requirement." Id. at 131.

As indicated, Martin pled guilty to one count of possession with intent to distribute cocaine, and aiding and abetting. The government filed notice of a prior offense pursuant to 21 U.S.C. § 851. Martin was sentenced to 240 months' imprisonment, the minimum mandatory based upon the government's filing the notice of prior offense under § 851. Martin appeals the denial of his motion to suppress, arguing:

In light of the district court's finding that Officer Whisner lacked credibility concerning the events leading up to Mr. Martin's arrest, a remand is necessary for further findings in connection with the court's denial of the motion to suppress under the plain view and inventory search doctrines.

Appellant's Op. Br. at 1.

### DISCUSSION

"In reviewing the denial of a motion to suppress, we accept factual findings unless they are clearly erroneous and view the evidence in the light most favorable to the ruling." United States v. Ojeda-Ramos, 455 F.3d 1178, 1180 (10th Cir. 2006). We review de novo, however, "the ultimate determination of reasonableness under the Fourth Amendment." Id.

The district court found the warrantless search of Martin's car and seizure of the drugs were justified under either the plain view or the inventory exception to the Fourth Amendment's warrant requirement. The government also argues on appeal that the seizure of drugs can be upheld because they were seized in the course of a search incident to a valid arrest.

Martin argues that, because the district court "made no finding about the [car] door's position, or whether the drugs would have been in plain view were the door closed," a remand is required "for further findings on whether the drugs were, in fact, in plain view from the officer's perspective outside the closed car." Appellant's Op. Br. at 10. Martin argues this is particularly necessary because the district court specifically questioned the reliability of Officer Whisner's testimony concerning his pursuit of Martin, given the fact that it was contradicted by two other witnesses, whom the district court specifically found credible on that

-6-

point. Thus, he argues, we have reason to doubt the reliability of Whisner's testimony about whether the car door was open or not and whether the drugs were really in plain view. He further argues that the search and seizure were not justified under the inventory exception or as a search incident to a valid arrest.

Martin's counsel perceptively identifies an anomaly in the district court's findings concerning the credibility of Officer Whisner and she argues persuasively that a remand is necessary. Nonetheless, we ultimately conclude that such a remand is not required. Rather, we hold that the district court's finding that the drugs seized were in plain view is not clearly erroneous. Because we conclude that the plain view doctrine permitted the seizure of the drugs, we need not reach the issues of whether the seizure was justified under the inventory or search incident to an arrest exceptions to the warrant requirement.

> The "plain view" doctrine allows a law enforcement officer to seize evidence of a crime, without violating the Fourth Amendment, if "(1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent (i.e., there was probable cause to believe it was contraband or evidence of a crime), and (3) the officer had a lawful right of access to the object."

United States v. Angelos, 433 F.3d 738, 747 (10th Cir. 2006) (quoting United States v. Thomas, 372 F.3d 1173, 1178 (10th Cir. 2004)). The district court found that all three elements of the plain view doctrine were satisfied here, including finding that it was irrelevant whether Martin's car door was open or not "because the police have a right of access to contraband inside a vehicle even when the

vehicle's doors and windows are closed." Tr. of Suppression Hr'g at 132, R. Vol. II.

Martin does not dispute that Whisner was lawfully in a position to look in Martin's car, nor does he dispute the incriminating nature of the drugs. He argues that Whisner's testimony that the car door was open, permitting a clear view of the drugs inside, was not reliable because the district court had already found unreliable Whisner's testimony about other aspects of his encounter with Martin. We do not agree. The district court specifically stated that it had "serious concerns about Officer Whisner's testimony up to the point in time when defendant was placed in handcuffs." Tr. of Suppression Hr'g at 131, R. Vol. II (emphasis added). However, the seizure of the drugs from the car occurred after that time. Given the court's conclusion that the plain view doctrine justified the seizure, the district court obviously implicitly found Officer Whisner's testimony about the car door and the location of the drugs was credible.

> Although the troopers' testimony is at odds with that of the defendant's witness, when there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. Implicit in the district court's order denying [defendant's] motion to suppress is the court's resolution of credibility issues in favor of the troopers.

United States v. Toro-Pelaez, 107 F.3d 819, 824-25 (10th Cir. 1997) (internal quotations and citation omitted). The court did *not* find all of Officer Whisner's

testimony unreliable, only a specific part of it. And it implicitly found the remainder of his testimony to be credible.

Furthermore, we find no clear error in the district court's conclusion that the drugs were clearly visible to Officer Whisner. The officer's testimony, based upon his observations and perception when he was standing only a few feet from the car containing the drugs, is only slightly contradicted by two witnesses watching from hundreds of feet away. See, supra, n.3.

## CONCLUSION

For the foregoing reasons, we AFFIRM the denial of Martin's motion to suppress.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge